IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PHILIP MAIER,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL NO. 1:CV-09-1427** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **REV. JAMES W. PALL,** *et al.,* | : | |
| | : | |
| **Defendants** | : | |

# M E M O R A N D U M

Presently before the court is a motion to compel responses to several discovery requests filed by Plaintiff Philip Maier, an inmate incarcerated at the State Correctional Institution in Dallas, Pennsylvania ("SCI-Dallas").  (Doc. 68.) Specifically, Plaintiff is seeking responses to three sets of interrogatories and a request for production of documents he previously served upon Defendants.  For the reasons that follow, the motion to compel (Doc. 68) will be granted in part, deferred in part, and denied in part.

## I.   Background

Plaintiff initiated this civil rights action pursuant to 42 U.S.C. § 1983 on July 23, 2009, as amended, April 1, 2011, against various Pennsylvania Department of Corrections ("DOC") employees.  (Doc. 49.)  In the amended complaint, Plaintiff claims that Defendants are violating his First Amendment rights by refusing to give

him access to certain religious materials.

Defendants filed an answer to the amended complaint on June 15, 2011. (Doc. 56.)  On August 29, 2011, the court issued an amended order setting the deadline for completion of discovery for October 7, 2011.  (Doc. 63.)  After discovery closed, Plaintiff filed the instant motion to compel on November 1, 2011.  (Doc. 68.)  Outstanding are issues relating to discovery disputes regarding three separate interrogatories and a request for production of documents served upon Defendants.  Those issues will be discussed herein.

## II.   **Discussion**

Generally, courts afford considerable latitude in discovery in order to ensure that litigation proceeds with "the fullest possible knowledge of the issues and facts before trial."  *Hickman v. Taylor*, 329 U.S. 495, 501 (1947).  The polestar of discovery is relevance.  Relevance for discovery purposes is defined broadly.  The Federal Rules of Civil Procedure permit discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense . . . .  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  "[A]ll relevant material is discoverable unless an applicable evidentiary privilege is asserted.  The presumption that such matter is discoverable, however, is

2

defeasible." *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000).  Rule 26(b)(2)

authorizes a court to limit discovery where:

> (i) the discovery sought is unreasonably cumulative or duplicative, or
> is obtainable from some other source that is more convenient, less
> burdensome, or less expensive; (ii) the party seeking discovery has
> had ample opportunity to obtain the information sought by discovery
> in the action; or (iii) the burden or expense of the proposed discovery
> outweighs its likely benefit, considering the needs of the case, the
> amount in controversy, the parties' resources, the importance of the
> issues at stake in the action, and the importance of the discovery in
> resolving the issues.

Fed. R. Civ. P. 26(b)(2)(c)(i)-(iii).  However, when there is no doubt about

relevance, a court should tend toward permitting discovery.  *Stabilus v.*

*Haynsworth, Baldwin, Johnson & Greaves, P.A.*, 144 F.R.D. 258, 265-66 (E.D. Pa.

1992).

Federal Rule of Civil Procedure 37 allows a party who has received evasive

or incomplete discovery responses to seek a court order compelling additional

disclosure or discovery.  The party seeking the order to compel must demonstrate

the relevance of the information sought.  The burden then shifts to the opposing

party, who must demonstrate in specific terms why a discovery request does not

fall within the broad scope of discovery or is otherwise privileged or improper.

*Goodman v. Wagner*, 553 F. Supp. 255, 258 (E.D. Pa. 1982).

On at least three occasions during the discovery process in the instant matter,

3

Plaintiff served interrogatories and a request for production of documents on the

Defendants.  Defendants responded to the requests by providing documentation or

reserving the right to supplement their response at a later date, or by objecting on

the basis of relevancy, privilege, or security concerns.  (*See* Doc. 75.)  At issue

here are Defendants' objections to Plaintiff's first, second, and second

supplemental interrogatories and one request for production of documents.  The

court will review the separate requests and responses thereto in order to resolve the

instant discovery dispute and place the case back in a posture to be resolved.

### A.    Plaintiff's First Set of Interrogatories

Defendants have objected to several of Plaintiff's interrogatories from his

first set of interrogatories.  Those requests and objections are detailed as follows.

### 1.    Interrogatory No. 6(b)(2)

In Interrogatory No. 6(b)(2), Plaintiff asked Defendant Pall to state whether

he wrote by hand his name ("Chaplain Pall") on the envelope that was mailed to

Plaintiff containing a Thor's Hammer, a religious item.  (Doc. 68-1 at 8.)  In his

response, Defendant Pall objected, stating, "I cannot read the notation on the

envelope."  (*Id.*)

In the instant motion, Plaintiff asserts that he asked counsel for Defendants

to arrange to have Defendant Pall examine the original envelope, presumably in the

possession of SCI-Dallas officials, but this was not done.  (Doc. 68 at 1.)  In their

response to the instant motion, Defendants argue, "Defendant Pall cannot be forced

to respond, under oath, to an inquiry when he is unable to comprehend what he is

being asked to identify."  (Doc. 76 at 2.)  However, in a set of exhibits filed by

Plaintiff in connection with his reply briefing, Plaintiff attaches two photocopies of

the envelope, one darker than the other, but both showing "Chaplain Pall" on the

envelope.  (Doc. 82 at 10-11.)  Because the court has determined that the lighter-

shaded hardcopy of this exhibit is clear enough to enable Defendant Pall to respond

to Plaintiff's interrogatory here, the court will forward to Defendants a hardcopy of

this exhibit and direct Defendants to further respond to this interrogatory after

Defendant Pall has examined it.

### 2.   <u>Interrogatories Nos. 16(d)-(f), 16(i)</u>

In Interrogatory No. 16(d), Plaintiff asked Defendant Klem for a definition

of the designation "Security Threat Groups."  (Doc. 68-1 at 12.)  In Interrogatory

No. 16(e), Plaintiff asked for an explanation of how a determination was made that

the Thor's Hammer sent to him is a symbol used by Security Threat Groups.  (*Id.*

at 13.)  In Interrogatory No. 16(f), Plaintiff asked for the identity of the Security

Threat Groups that use the Thor's Hammer as a symbol.  (*Id.*)  In Interrogatory No.

16(i), Plaintiff asked for information on how runes could be used to pose a security

threat or to manipulate other inmates.  (*Id*. at 13-14.)  In each response to these

interrogatories, Defendants objected on the basis that the information sought by

Plaintiff is kept confidential for security reasons.  (*Id*. at 13-14.)

   In the instant motion, Plaintiff requests that this information be provided to

the court for *in camera* review.  (Doc. 68 at 1.)  In response, Defendants argue that

disclosure of this information to Plaintiff would compromise the security of DOC

institutions and the public.  (Doc. 76 at 2-3.)  In light of Plaintiff's request for *in

camera* review, the court will direct Defendants to provide to the court the

requested information for *in camera* review.  As such, a ruling on this issue is

deferred until the court has examined the submitted information.

### 3.    Interrogatory No. 19(d)

   In Interrogatory No. 19(d), Plaintiff asked Defendant Demming for evidence

the Religious Accommodation Review Committee relied upon for its "negative

decision that one inmate may use runes to manipulate another inmate."  (Doc. 68-1

at 16.)  In their response, Defendants objected on the basis that Defendant

Demming is not authorized to speak for the entire Religious Accommodation

Review Committee.  (*Id*.)

   In the instant motion, Plaintiff asserts that when he received Defendant

Demming's response to this interrogatory, he rephrased the interrogatory in a later

request, and Defendant Demming objected again, this time based on the fact that any response would pose a security risk. (*See* Doc. 71 at 10.) In their response, Defendants object on the basis of both of its previous responses to Plaintiff's interrogatory. (Doc. 76 at 3-4.) More specifically, Defendants claim that responding to this interrogatory would give Plaintiff an instruction manual on how to use contraband to manipulate other inmates. (*Id.* at 4.) Based on the court's decision above to review *in camera* any DOC manuals or other information on Security Threat Groups, *see supra*, a ruling on this issue will be deferred until the court has examined the submitted information.

### 4.    Interrogatory No. 20

In Interrogatory No. 20, Plaintiff asked Defendant Demming to explain the comments made on a DC-53 form, Evaluations of Requests for Religious Accommodation, dated September 20, 2007. (Doc. 68-1 at 16.) In response, Defendants objected, stating that the comments on the DC-53 evaluation speak for themselves. (*Id.* at 17.)

In the instant motion, Plaintiff asserts, "Defendant Demming's response to this interrogatory is nonsensical in that there are no comments on Plaintiff's DC-53 on Sept. 20, 2007, by Demming. Plaintiff seeks an order compelling Defendant Demming to disclose his written comments on this document. Perhaps the

7

comments are in invisible ink or type." (Doc. 68 at 2.)  In their response,

Defendants assert that Defendant Demming cannot be compelled to explain

comments that do not exist, nor can he be compelled to explain the comments of

other individuals.  (Doc. 76 at 4.)

The court finds that this is an adequate response to the interrogatory and will

not direct further response.  Therefore, the motion to compel will be denied with

regard to Interrogatory No. 20.

## 5.   **Interrogatory No. 22**

In Interrogatory No. 22, Plaintiff asked Defendant Demming to explain what

documents he relied upon for his comments on the DC-53 evaluation of September

20, 2007.  (Doc. 68-1 at 17.)  In response, Defendants objected, stating that any

comments speak for themselves.  (*Id*.)

In the instant motion, Plaintiff seeks a court order directing Defendant

Demming to provide this information.  (Doc. 68 at 2.)  In response, Defendants

assert that they would provide an updated response to the interrogatory.  (Doc. 76

at 4.)  In connection with his reply to the motion, Plaintiff attaches as an exhibit

Defendants' supplemental response, which further responds as follows, "No

documents were relied upon.  The information came from a discussion with

Plaintiff's counselor."  (Doc. 82 at 18.)  Plaintiff argues in his reply that this

response is "highly prejudicial," and requests leave to serve additional

interrogatories upon Defendant Demming.

At this juncture, the court finds that Defendants' supplemental response is an

adequate response to the interrogatory and will not direct further response, nor will

the court permit Plaintiff to serve upon Defendant Demming additional

interrogatories.  Therefore, the motion to compel will be denied with regard to

Interrogatory No. 22.

### 6.      Interrogatories No. 26(b), 26(c)

In Interrogatory No. 26(b), Plaintiff asked Defendant Klopotoski to explain

what comments by the Corrections Classification Program Manager ("CCPM") he

relied upon for his DC-53 evaluation of September 20, 2007.  (Doc. 68-1 at 18.)  In

Interrogatory No. 26(c), Plaintiff asked Defendant Klopotoski to state where the

comments of the CCPM are documented.  (*Id*.)  In response to both interrogatories,

Defendants objected on the grounds that the interrogatories were vague and

ambiguous.  (*Id*.)

In the instant motion, Plaintiff seeks a court order directing Defendant

Klopotoski to provide this information.  (Doc. 68.)  In response, Defendants again

assert that these interrogatories are confusing and ambiguous.  (Doc. 76 at 5.)

With respect to Interrogatory No. 26(b), Defendants assert, "First, Plaintiff has

failed to establish that Defendant [Klopotoski] relied on any comments.  Second, Plaintiff has failed to establish that any comments relied upon by Defendant [Klopotoski] were made by a CCPM.  Third, Plaintiff has failed to establish that there were, in fact, any comments made by a CCPM at all." (*Id.*)  With respect to Interrogatory No. 26(c), Defendants assert, "There is no indication what CCPM is being referred to, what comments are being referred to, etc." (*Id.*)  In his reply, Plaintiff argues that because in the DC-53 evaluation Defendant Klopotoski states that he "concur[s] with comments offered by the CCPM," there is nothing confusing or ambiguous about his interrogatories.  (Doc. 86 at 4.)  Further, attached to Plaintiff's motion to compel is the DC-53 evaluation from September 20, 2007, in which Defendant Klopotoski does, in fact, make such a statement. (*See* Doc. 68-1 at 34-35, Ex. B.)  In his reply, Plaintiff asks that Defendant Klopotoski identify the CCPM to whom he is referring.  (Doc. 86 at 4.)

The court finds that, despite Defendants' assertion that these interrogatories are confusing and ambiguous, Plaintiff has clarified his request in his reply briefing, and therefore Defendant Klopotoski will be directed to identify, if possible, which CCPM he was referring to in the DC-53 evaluation from September 20, 2007.  The motion to compel with respect to any of Plaintiff's other requests in these interrogatories will be denied.

**B.**     **Plaintiff's Second Set of Interrogatories**

Defendants have objected to several of Plaintiff's interrogatories from his second set of interrogatories. Those requests and objections are detailed as follows.

**1.**     **Interrogatory No. 10**

In Interrogatory No. 10, Plaintiff asked Defendant Meintel to provide him with the number of DC-52 forms filed for Plaintiff with the prison officials. (Doc. 68-1 at 40.) In response, Defendant simply stated, "Yes." (*Id.*)

In the instant motion, Plaintiff requests a court order directing Defendants to provide him with the proper answer to this interrogatory. (Doc. 68 at 2.) In their response, Defendants indicate that Defendant Meintel will provide an updated response to this interrogatory by March 2, 2012. (Doc. 76 at 5.) Plaintiff's reply brief does not indicate whether he received this update. (Doc. 86.) Therefore, if Defendant Meintel has not already provided the relevant information to Plaintiff, the court directs Defendants to do so in a timely fashion.

**2.**     **Interrogatories 17(a)-(d), 18(a)-(c), 27**

In Interrogatories 17(a)-(d), Plaintiff asked Defendant Meindel the following:

> 17.  Your memo of January 23, 2009, stated that Plaintiff's request for runes were [sic] denied "because they can be used by inmates to

11

manipulate others and thus pose a security concern."  The following subparts relate to this issue.

a.  Explain who made the determination that runes can be used by inmates to manipulate others.

* * *

b.  Explain whether there was any evidence presented to you to illustrate the fact of how or why runes may be used to manipulate another inmate.

* * *

c.  Explain whether you had discussions with other CORARC members about this issue.

* * *

d.  Do you have any reports of inmates who profess to to [sic] practice Odinism/Asatru/Wotanism using runes to manipulate other inmates.

(Doc. 68-1 at 42-43.)  In Interrogatories 18(a)-(c), Plaintiff asked Defendant

Meintel the following:

18.  Your memo January 23, 2009, stated that a "Thor's hammer is denied because it is a symbol used by Security Threat Groups."  The following subparts relate to this issue.

a.  Explain who made the determination that a Thor's hammer is a symbol used by Security Threat Groups.

* * *

b.  Explain when this determination was made.

12

* * *

      c. Explain whether you had discussions with other CORARC members about this issue.

(*Id*. at 43.)  In Interrogatory No. 27, Plaintiff asked Defendant Demming again to identify what evidence he relied upon to make a decision that an inmate may use runes to manipulate another inmate.  (*Id*. at 45.)  In their response, Defendants objected to each interrogatory, stating, "Defendants OBJECT to this request on the basis that it seeks information that is kept confidential for security reasons.  The release of this information would significantly increase the difficulty of DOC staff and administration to effectively maintain care, custody and control of the inmates as well as provide security for the DOC staff and the general public."  (*Id*. at 42-43, 45.)

In the instant motion, Plaintiff requests that this information be provided to the court for *in camera* review.  (Doc. 68 at 2.)  In response, Defendants argue that responding to these interrogatories poses a security risk.  (Doc. 76 at 5.)  Based on the court's decision above to review *in camera* any DOC manuals or other information on Security Threat Groups, *see supra*, a ruling on this issue will be deferred until the court has examined the submitted information.

     **3.**    **Interrogatory No. 38**

In Interrogatory No. 38, Plaintiff asked Defendant Meintel the following:

38. With respect to Plaintiff's June 27, 2005, evaluation former Director Dave Roberts issued a memo on September 22, 2005, stating in substantial part as follows:

Literature provided notes that "many Asatruers wear hair in quite ordinary contemporary styles," and while noting that early founders wore hair and beards long, that seemed to be for rank in circle versus any truly religious reason.

The memo then effectively concluded "[h]air/beard length is seen as a preference and not a sincerely held religious belief." Based upon this, Plaintiff's prior request for a hair/beard length exemption was denied. . . . The following subparts are based on this memo.

a.  State whether you have previously reviewed Director Roberts' memo.

b.  State whether the basis for Plaintiff's hair/beard length exemption was the same when you later became Director and subsequently reviewed his renewed request for an exemption.

c.  If the response to part (b) is yes, then did you agree in essence that Plaintiff's request for an exemption was seen as a "preference" and not a sincerely held religious belief?

d.  State whether it is your view, or generally CORARC's view, that the literature cited by Director Roberts basically amounted to pointing out cultural differences among Asatruers in the way they adopted different hairstyles.

(Doc. 68-1 at 48-49.)  In their response, Defendants objected on the basis that the

interrogatory exceeded the number of interrogatories permitted under the Federal

Rules of Civil Procedure.  (*Id*. at 49.)

In the instant motion, Plaintiff requests a court order directing Defendants to

14

respond to this interrogatory, as it was within the limits set forth in the Rules. (Doc. 68 at 3.)  In response, Defendants assert that they will provide an updated response to this interrogatory.  (Doc. 76 at 6.)  In his reply, Plaintiff indicates that Defendants did provide him with an updated response, but takes issue with Defendant Meindel's response to subpart (b), listed above. (Doc. 86 at 7.)  In that response, Defendant Meindel stated, "I don't know.  The Religious Accommodation Committee reviews and makes the recommendation.  I forward this information to the institution for distribution." (Doc. 82 at 22.)  However, Plaintiff refers to an interrogatory response from Defendant Demming indicating that Defendant Meintel was one of the staff members charged with reviewing his 2007 request for a hair/beard length exemption, and therefore Defendant Meintel should be able to answer this subpart (b).  (Doc. 86 at 7.)  Seemingly, Plaintiff is now asking Defendant Meintel whether she has knowledge that his 2007 request for a hair/beard length exemption was denied because "[h]air/beard length is seen as a preference and not a sincerely held religious belief."  (Doc. 68-1 at 48.)

In light of Plaintiff's renewed and clarified request, the court will direct Defendant Meintel to further respond to this subpart (b) and (c), if possible. However, Plaintiff's request for an additional response to subpart (d) will be denied.

### 4.   Interrogatory No. 39

In Interrogatory No. 39, Plaintiff propounds a four-part interrogatory upon Defendant Klemm relating to Director Roberts' memo of September 22, 2005, denying Plaintiff's request for a hair/beard length exemption. (Doc. 68-1 at 49-50.)  In response, Defendants objected on the basis that it exceeds the number of interrogatories permitted under the Federal Rules of Civil Procedure.  (*Id*. at 50.)

In the instant motion, Plaintiff admits that this multi-part interrogatory exceeds the limit of allowable interrogatories, but asks that the court permit him to serve Defendant Klemm with three additional interrogatories. (Doc. 68 at 3.)  As Plaintiff has already had the opportunity to serve this Defendant with interrogatories and discovery in this matter is closed, the court will deny the motion to compel with respect to Interrogatory No. 39.

### C.   Plaintiff's Second Request for Production of Documents

In Plaintiff's second request for production of documents, he requested, *inter alia*, "the lists of all prisoners who have received a hair and beard length exemption based upon a request for a religious accommodation from 2005 to the present at SCI-Dallas." (Doc. 68-1 at 54.)  In response, Defendants stated, "None Exist." (*Id*.)

In the instant motion, Plaintiff requests a court order directing Defendants to

provide him with a response to this request.  (Doc. 68 at 3.)  In response,

Defendants state that they would provide an updated response to the request.  (Doc.

76 at 6.)  In a set of exhibits filed by Plaintiff in connection with his reply briefing,

Plaintiff attaches a supplemental response from Defendants in which Defendants

object to this request on the basis that it is unduly burdensome and not likely to

lead to the discovery of admissible evidence.  (Doc. 82 at 26.)  However,

Defendants do attach all the lists that are readily available, which include eight lists

totaling eleven pages, and spanning the time period from 2007 to 2011.  (*Id*. at 27-

37.)  In his reply brief, Plaintiff claims that Defendants are not in compliance with

his request because not included in their supplemental response are hair exemption

lists from 2005 and 2006, and any listings from 2008 and 2009.  (Doc. 86 at 8.)

The court concludes that, despite Defendants' assertion that the request is

unduly burdensome and not likely to lead to the discovery of admissible evidence,

given the timing of the events and occurrences relating to Plaintiff's claims,

Plaintiff is entitled to review the hair exemption lists from 2005 and 2006, as well

as any listings from 2008 and 2009.  Thus, the motion to compel with respect to

this request for production of documents will be granted.  However, any further

request by Plaintiff for additional requests for production of documents relating to

this issue will be denied.

### D.     Plaintiff's Supplemental Request for Interrogatories, Second Set

In the instant motion, Plaintiff asserts that pursuant to the court's order of July 21, 2011, (Doc. 59), he served a supplemental set of interrogatories on Defendant Pall.  (Doc. 68 at 4.)  Additionally, pursuant to the court's order of May 29, 2011, which extended the period of discovery, (Doc. 63), Plaintiff served a set of interrogatories on Defendant Doknovitch.  (Doc. 68 at 4.)  In the instant motion, Plaintiff claims that he did not receive responses to either set of interrogatories. (*Id.*)  In their response, Defendants assert that due to an internal filing error, those responses were not sent, and indicated that they would provide the responses by March 2, 2012.  (Doc. 76 at 6.)  In his reply brief, Plaintiff states that he received from Defendants additional documents, and thus does not dispute Defendants' response to his motion to compel with respect this set of interrogatories.  (Doc. 86 at 1.)  As a result, the court finds Defendants' response to be a sufficient resolution of this request and will not direct the production of any further documentation in response to said request.

## III.   Conclusion

Based on the foregoing, it is clear that Defendants have largely complied, in a good faith effort, with the discovery requests served upon them by Plaintiff.

They have made documents available for inspection which are not privileged, irrelevant, overbroad or objectionable on any other basis.  However, certain requests, discussed herein, remain outstanding.  As such, Defendants will be directed to further respond to Plaintiff's requests, as outlined herein, on or before June 13, 2012.  Further, Defendants will be directed to respond to the court's order concerning the court's *in camera* review of certain documents on or before June 13, 2012.

      An appropriate order will issue.

    s/Sylvia H. Rambo     
United States District Judge

Dated:  May 17, 2012.

19

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PHILIP MAIER,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL NO. 1:CV-09-1427** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **REV. JAMES W. PALL,** *et al.,* | : | |
| | : | |
| **Defendants** | : | |

### O R D E R

**AND NOW**, this 17th day of May, 2012, upon consideration of Plaintiff's motion to compel discovery (Doc. 68), and for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1) The motion to compel (Doc. 68) is **GRANTED** in part as follows:

a) Defendant Pall is directed to further respond to First Set of Interrogatories No. 6(b)(2) **on or before June 13, 2012**.

b) Defendant Klopotoski is directed to further respond to First Set of Interrogatories No. 26(b)-(c) by identifying which CCPM he was referring to in the DC-53 evaluation from September 20, 2007, **on or before June 13, 2012**. Any other request with respect to this interrogatory is denied.

c) Defendant Meintel is directed to further respond to Second Set of Interrogatories No. 10 and No. 38(b) and (c) **on or before June 13, 2012**.  Any other request with respect to this interrogatory is denied.

d) Defendants are directed to further respond to Second Request for Production of Documents as set forth in the accompanying memorandum **on or before June 13, 2012**.

2) The motion to compel (Doc. 68) is **DEFERRED** with respect to First Set of Interrogatories Nos. 16(d)-(f), 16(i), 19(d); and, Second Set of Interrogatories Nos. 17(a)-(d), 18(a)-(c), 27.  The court will rule on these issues after Defendants provide to the court for *in camera* review the materials relevant to First Set of Interrogatories Nos. 16(d)-(f), 16(i), 19(d); and, Second Set of Interrogatories Nos. 17(a)-(d), 18(a)-(c), 27, to be submitted **on or before June 13, 2012**.

3)  The motion to compel (Doc. 68) is **DENIED** in all other respects, including, but not limited to, any requests therein for leave to file further interrogatories and requests for production of documents.


                                        s/Sylvia H. Rambo
                                        United States District Judge